IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA           :          CRIMINAL ACTION
                                   :
          v.                       :
                                   :
EDUARDO CASTELAN-PRADO             :          NO. 21-274-1

MEMORANDUM

Bartle, J.                                              June 26, 2025

        Before the court is the pro se motion of defendant
Eduardo Castelan-Prado to vacate, set aside, or correct his
sentence under 28 U.S.C. § 2255 (Doc. # 130).  He asserts
fifteen grounds of allegedly ineffective assistance of counsel
in violation of the Sixth Amendment to the Constitution.

        Defendant was charged with and found guilty by a jury
of conspiracy to commit kidnapping (18 U.S.C. § 1201(a)(1), (c),
and (g)) and kidnapping (18 U.S.C. § 1201(a)(1) and (g)).  At
all times during the trial defendant had the benefit of a
Spanish interpreter.  The defendant was sentenced to
imprisonment of 480 months.  The Court of Appeals affirmed.
United States v. Castelan-Prado, No. 22-3041, 2024 WL 3059876
(3d Cir. June 20, 2024).[1]

---

[1]    Our Court of Appeals initially affirmed the conviction and
sentence of Castelan-Prado and Ochoa on April 18, 2024.  See
United States v. Ochoa, No. 22-2968, 2024 WL 1672255 (3d Cir.
Apr. 18, 2024).  Both defendants moved for a rehearing by the
panel and en banc.  These motions were denied with the exception
of the motion of Castelan-Prado.  United States v. Castelan-
Prado, 2024 WL 3059875.  The Court's amendment to its earlier

I

The facts are chilling.  On the evening of June 14, 2021, defendant, with co-defendant Jose Reyes Ochoa and Rodrigo Rodriguez Gonzalez, a third conspirator who is now deceased, kidnapped seventeen-year-old J.S. at gunpoint at his place of work in Philadelphia.  The co-conspirators had surveilled the victim's home in Philadelphia, purchased and activated multiple GPS trackers, and rented a van which was used to transport J.S. to an apartment several hours away in Leona, New Jersey where he was held captive and at gun-point.  J.S. identified Castelan-Prado as the man who made ransom calls to his parents requesting money in exchange for his return.  The conspirators targeted J.S. because of an unsuccessful months-long effort to collect a drug debt his father allegedly owed to an unspecified Mexican cartel.

Our Court of Appeals summarized the facts of the kidnapping itself:

> J.S. went to the parking lot [of an Olive
> Garden in Philadelphia] at around 8:30 p.m.
> to put his tip money in his car.  The masked
> defendants pulled J.S. out of his car and
> threw him inside their car.  Castel[a]n-
> Prado and Gonzalez drove away with J.S. and
> Ochoa got into J.S.'s car and followed them.
> Ochoa abandoned J.S.'s car in an Acme
> parking lot five minutes away from the Olive

opinion concerned Castalan-Prado's defense duress, but the court's conclusion affirming his conviction and sentence did not change.  See Castelan-Prado, 2024 WL 3059876, at *2.

-2-

Garden and then got back into the
defendants' car.  The defendants drove J.S.
to New Jersey and transferred him into a
white van that Castel[a]n-Prado had rented
just days before the kidnapping.
Eventually, they took J.S. out of the van
and into Castel[a]n-Prado's apartment.  They
held J.S. hostage in this apartment until
his eventual rescue.

From the moment J.S. was kidnapped, the
defendants made numerous ransom calls to his
parents, demanding $500,000 for their son's
release.  Based on the ransom calls, the
authorities traced the defendants' location
and set up surveillance outside Castel[a]n-
Prado's apartment.

Federal agents conducted a rescue operation
of J.S. on the morning of June 16. The
agents stormed Castel[a]n-Prado's apartment,
fatally shot Gonzalez (who was guarding J.S.
with a firearm), and rescued J.S.[.] Ochoa,
an adult woman named Sonia Mabel Cabrera,
and Castel[a]n-Prado's 15-year-old son were
also in the apartment.  The agents found
Castel[a]n-Prado soon thereafter in a second
apartment in the same complex.  The evidence
recovered in the apartments included the
burner phones used to make the ransom calls
and a GPS tracker.  J.S.'s father would
later inform the agents that he found an
identical GPS tracker on the bottom of his
car.

Castelan-Prado, 2024 WL 3059876, at *1.

        Three days before trial, Castelan-Prado attended a

proffer with the Government.  An interpreter was present.  At

that meeting, defendant admitted to the crimes charged in Counts

I and Count II of the Indictment.  Significantly, he admitted

that he travelled to the home of the victim and took videos of

his home, that he purchased a GPS tracker, registered it to his name, and placed it on one of the cars outside of J.S.'s home, and that he was present at the kidnapping. He also admitted that he made several ransom calls to the victim's mother and that he rented the van that was used in the kidnapping.

The Government moved for an offer of proof as to Castelan-Prado's duress defense. It also sought to preclude that defense and to prohibit defendant from taking a position that contradicted his proffer (Doc. # 64). The court held a hearing on June 15, 2022 during which Castelan-Prado's counsel made the offer of proof. The court viewed the proffer in the light most favorable to the defendant. See United States v. Paolello, 951 F.2d 537, 542 (3d Cir. 1991).

Defense counsel proffered that Castelan-Prado did not know that a kidnapping would be taking place until it occurred and that Rodrigo Gonzalez, the now deceased co-conspirator, threatened Castelan-Prado so that he would continue participating in the kidnapping by telling him "that he knows where he [Castelan-Prado] lives. That everyone knows where he lives." It was implied that "his family, that this whole operation is being watched." His counsel emphasized that defendant continued to work with Rodrigo Gonzalez with respect to the kidnapping in order to escape any danger Rodrigo Gonzalez posed to him and his family.

-4-

The court, even accepting the offer of proof, found that defendant did not establish a defense of duress because he failed to show that "there was no reasonable opportunity to escape the threat and harm." See United States v. Grover, 831 F. App'x 604, 607 (3d Cir. 2020). For this reason the court granted the Government's motion to preclude Castelan-Prado from offering that defense during the trial.

II

A motion under 28 U.S.C. § 2255 is a form of collateral attack identical in scope to federal habeas corpus. See Davis v. United States, 417 U.S. 333, 343 (1974); see also 28 U.S.C. § 2255. As noted above, defendant claims he suffered from ineffective assistance of counsel.

To establish ineffective assistance of counsel, petitioner must first demonstrate that his counsel's performance fell below "an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). Defendant must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [a] defendant by the Sixth Amendment." Id. at 687.

Defendant must also prove he was prejudiced by any objectively deficient performance by his counsel. He must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

-5-

would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  In assessing petitioner's ineffective assistance of counsel claims, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"  Id. at 689.

Counsel is given leeway to employ the strategy he or she considers most effective under the circumstances.  See id. at 691.  Ultimately, defendant must overcome the presumption that the actions of his counsel may be considered reasonable trial strategy.  Id. at 689 (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

### III

The fifteen grounds of alleged ineffective assistance, many of which are conclusory, are as follows:

(1)  "Ineffective assistance of counsels [sic] during pretrial, and sentencing for failing to object, file motions, investigate, inform and apprise of the facts, and explain the benefits of trial or accepting a plea offer";

(2)  "Counsels [sic] were ineffective for their failure to explain and discuss petitioner's available options and possible consequences, decision to opt to trial or not, and adequately counsel petitioner of the situation";

(3)  "Counsels [sic] ineffective assistance renders voids [sic] petitioner's not guilty plea because it was entered unknowingly, unintelligently, and involuntarily";

(4)  "Counsels [sic] were ineffective for failing to object, preserve for appeal and argue the cumulative errors throu[ghout] the pretrial and sentencing process violating petitioner's rights to a fair process";

(5)  "Counsel was ineffective for failing to properly investigate the facts surround the arrest, investigative reports, and the contradicting theories and evidence";

(6)  "Counsel was ineffective for failing to explain plea offers and failing to properly engage in the plea negotiation process";

(7)  "Counsel was ineffective for failing to explain the sentencing exposure if convicted at trial or a plea of guilty";

(8)  "Counsel was ineffective for failing to provide an interpreter during visits";

(9)  "Counsel was ineffective for failing to inform petitioner that the decision to testify was his sole right";

(10) "Counsel was ineffective for failing to properly investigate, corroborate, impeach and move to dismiss before and at trial the testimony of the government's three witnesses";

(11) "Counsel was ineffective for 'dropping the ball' during the plea negotiation phase";

(12) "Counsel was ineffective for failing [to] conduct a proper consultation between petitioner and counsel during pretrial visits";

(13) "Counsel was ineffective for failing to disclose, challenge and explain the full discovery";

(14) "Counsel was ineffective for abandoning petitioner's best interests during pretrial and plea negotiation phase"; and

(15) "Counsel was ineffective for depriving petitioner to testify at trial."

IV

Defendant asserts throughout this § 2255 motion that he could not understand his attorney and that an interpreter was not provided to him for certain pretrial meetings with his counsel.  He is not specific whether his counsel conducted their out-of-court meetings in English or Spanish or which languages he and his counsel spoke.  It is clear that defendant was provided with an interpreter whenever he was before the court as well as during his proffer with the Government before trial.

Defendant's counsel at all times in court exhibited a full understanding of Castelan-Prado's case and his interests, which belies the conclusion that they were unable to communicate

-8-

effectively.  Before the court, his counsel provided a detailed account of his anticipated defense of duress.  An interpreter was present at this hearing, and Castelan-Prado does not state that he was unaware of the evidence that she presented or that she did not interpret his recollection of the events correctly.

At his trial, his counsel presented testimony from multiple character witnesses, whose names she could have received only through speaking with client.  Castelan-Prado similarly failed to raise any deficiencies in their communication during his trial or during his colloquy with the court regarding his right to testify and his counsel's advice regarding the same.  Overall, his counsel would have been unable to represent him as she did if they had been unable to understand one another.  He also failed to explain how he was prejudiced by any deficiency.  At trial defendant's counsel represented his interests with zeal and professionalism.  This claim of ineffective assistance of counsel misses the mark.

Defendant contends throughout his motion that he was unable to review all of the evidence against him.  He neither specifies what evidence he was unable to review nor shows how he was prejudiced.  Three days prior to trial, defendant participated in a proffer with the Government.  At that meeting, defendant was obligated to tell the truth.  He discussed at length the factual basis behind the charges brought against him

and admitted to much of the evidence that the Government later
presented at trial.  This evidence included his extensive
surveillance of the victim, his purchase of the GPS tracker, and
his making of several ransom phone calls to the victim's mother.
After this proffer, the court held a hearing on the Government's
motion to preclude his defense of duress.  Again, at this
hearing, defendant witnessed the Government and his counsel
discuss the evidence which formed the basis for the charges
against him.  From these proceedings defendant surely was aware
of the evidence against him.  Any claims to the contrary are
without any support.

        Defendant broadly challenges his counsel's assistance
at "the plea-bargaining stage."  He states that she "dropped the
ball" and failed to protect his best interests.  A criminal
defendant has the right to effective assistance of counsel
during the plea-bargaining process.  Counsel is required to
provide competent advice when counsel presents a client with a
formal plea offer.  See, e.g., Lafler v. Cooper, 566 U.S. 156,
162-63 (2012).  However, as the Supreme Court has ruled, "[i]f
no plea offer is made, . . . the issue [of ineffective
assistance of counsel] raised here simply does not arise."  Id.
at 168.

        The Government did not make a formal plea offer to
defendant.  It is within the prosecutor's discretion whether to

-10-

do so.  A defendant has no right to a plea bargain or a formal plea offer.  Weatherford v. Bursey, 429 U.S. 545, 560-61 (1977). The claim of the defendant that the lack of a plea deal was a result of his own counsel's ineffectiveness is meritless, particularly in light of his position at trial and continuing in his § 2255 motion that he was not guilty of the offenses charged.

Defendant also states that his "not guilty plea" should be rendered void because it was entered without a full understanding of the charges against him.  Even if so, he has shown no prejudice.  Defendant must show that, absent his counsel's incompetence, the outcome would have been different. Strickland, 466 U.S. at 694.  As defendant was not offered a plea bargain, he must show that he would have entered an open guilty plea if he wanted to plead guilty.  However, he never asserts he would have done so.  On the contrary, he avers, as noted above, that he is not guilty of the offenses for which he was convicted.  As he does not accept responsibility for the crimes with which he is charged, he cannot credibly claim that he would have chosen to enter an open guilty plea.

Defendant asserts that his counsel failed to challenge his arrest, the search and seizure warrants or any evidence at trial.  His counsel's decision not to challenge his arrest or the warrants is a strategic decision.  The court must give

-11-

defense counsel leeway to employ the strategy she considered most effective under the circumstances.  Strickland, 466 U.S. at 691.  Defendant has not shown any prejudice in this regard.

Defendant submits that his counsel was ineffective for not impeaching certain Government witnesses and for not moving for a mistrial after they made inconsistent statements. Defendant provides no basis for a mistrial.  Counsel cannot be deemed ineffective for failing to take a meritless position. Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000).  This ground for relief fails.

Defendant maintains that his counsel did not inform him of his right to testify and acted to deprive him of such right.  This claim too has no validity.  The court engaged him in a colloquy on this subject during the trial:

> COURT: Do you understand that you have a constitutional right to testify in your own defense?
>
> CASTELAN-PRADO: Yes.
>
> COURT: Do you also understand that you have a constitutional right not to testify?
>
> CASTELAN-PRADO: Yes.
>
> COURT: Do you also understand that if you do not testify, the jury may not draw an adverse inference against you simply because you have not testified?
>
> CASTELAN-PRADO: Yes.
>
> COURT: Mr. Castelan-Prado, I advise you that you should listen to the advice of your

          attorney as to whether or not you should
          testify.

          CASTELAN-PRADO: Yes, sir.

          COURT: However, the final decision as to
          whether or not you testify or do not testify
          is your decision alone, not your attorneys.

          CASTELAN-PRADO: I understand.

Defendant understood his right to testify or not to testify and
that the "final decision" was his.  He cannot now assert with
any credibility to the contrary.

          Defendant asserts that his counsel was ineffective
because he did not know the sentence that this court would
impose and therefore was unable to make an informed decision in
opting to proceed to trial.  First, he has maintained his
innocence throughout so it is incredible to think that he was
even considering this option.  Second, no counsel can advise his
or her client, whether before or after trial, as to what
sentence the court will hand down.  While a court must first
calculate the sentence under the advisory Sentencing Guidelines,
it is not bound by that calculation.  It will impose a sentence
that is sufficient but not greater than necessary, after
reviewing the pre-sentence report, hearing from any witnesses,
listening to arguments of counsel, considering defendant's
comments in allocution, and taking into account the various
factors under 18 U.S.C. § 3553(a).  The court will not find

-13-

Castelan-Prado's counsel to be ineffective for failing to do the impossible.

Similarly, Castelan-Prado alleges that he was not informed of any enhancements to his sentence or direct appeal procedures.  At his sentencing, the court explained that his base offense level under the advisory Sentencing Guidelines was 32.  Six levels were added because a ransom demand had been made and two more levels because a dangerous weapon was used.  The court, over defendant's objection, imposed two extra levels as the victim was vulnerable and two extra levels as the jury found defendant used his minor son to purchase the GPS tracker used in the course of the offense.  Defendant's total offense level was 44, and he fit into criminal history category I.  His advisory sentencing range was life imprisonment.  Since the victim was a minor and defendant was not a close relative, he faced a twenty-year mandatory minimum sentence under 18 U.S.C. § 1201(g).  The court imposed a sentence below the guideline range of 480 months of imprisonment on each count with the sentences to run concurrently.

His counsel advocated for him in his presence during his sentencing.  An interpreter was present and contemporaneously translated these arguments for his benefit. His counsel challenged the imposition of two enhancements to his sentence.  Although she was not successful, her defense of her

-14-

client suggests that they discussed the enhancements.  He was certainly aware of the enhancements before his opportunity for allocution.  In any event, he cannot show that he was prejudiced for her purported failure to discuss them with him.  It simply is not credible to the extent he argues that it is reasonably probable this court's sentence would have been lower had he been better informed.  While he avers that his counsel failed to discuss an appeal, his appeal was timely, and he offers no basis that he was prejudiced during the appellate process.

The remaining asserted grounds for relief are simply vague and conclusory statements without accompanying factual support.  Such claims are without merit and will be denied. United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000).

IV

Castelan-Prado requests that an evidentiary hearing be held on his claims for relief.  The court is not under any obligation to do so here as he has not come forward with sufficient allegations showing that he is entitled to relief. His allegations are either contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact.  United States v. McCoy, 410 F.3d 124, 134 (3d Cir. 2005).  His request for an evidentiary hearing will not be granted.

V

The court will deny defendant's motion for relief under 28 U.S.C. § 2255 as none of the asserted grounds for relief has merit.  No denial of a Constitutional right has been shown.  Defendant has not come forward with facts to establish that his counsel's performance was objectively deficient or that there was a reasonable probability as a result of any error on the part of his counsel to undermine confidence in the outcome of the case.  Strickland, 466 U.S. at 693.  On the contrary, the performance of his counsel under difficult circumstances is to be commended.  A certificate of appealability will not issue.